UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT McCULLOCK, CDCR #V-32182,<br><br>Plaintiff,<br><br>vs.<br><br>N. SCHARR, Correctional Sergeant;<br>H. FERREL, Correctional Lieutenant<br>T. MARTINEZ, Correctional Captain;<br>J. JUAREZ, Associate Warden;<br>SMITH, Correctional Officer;<br>DOE -10,<br><br>Defendants. | Case No.: 3:19-cv-2110-DMS-DEB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO Fed. R. Civ. P. 56(a)**<br><br>**[ECF No. 35]** |

ROBERT McCULLOCK ("Plaintiff"), a prisoner currently incarcerated at the California Mens Colony located in San Luis Obispo, California, is proceeding pro se and in forma pauperis ("IFP") in this civil action pursuant to 42 U.S.C. § 1983. In his Complaint ("Compl."), Plaintiff alleges Richard J. Donovan Correctional Facility ("RJD") prison officials violated his Eighth Amendment rights when they failed to

1

protect him from an attack by another inmate. *See* ECF No. 1 at 4-6.[1]

## I. Procedural History

On December 3, 2019, the Court granted Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a) and screened his Complaint before service as required by 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See* ECF No. 6. The Court sua sponte dismissed Defendant Covello but found Plaintiff's Eighth Amendment failure to protect claims against Defendants Scharr, Ferrel, Martinez, Juarez, and Smith ("Defendants") sufficient to state plausible claims upon which relief may be granted. *Id.* at 5-7.

Defendants filed an Answer to Plaintiff's Complaint on February 18, 2020. *See* ECF No. 22. On February 12, 2021, Defendants filed a Motion for Summary Judgment. *See* ECF No. 35. On February 16, 2021, the Court notified Plaintiff of the requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and set a briefing schedule. *See* ECF No. 36. Plaintiff filed his Opposition to Defendants' Motion on April 2, 2021. *See* ECF No. 40. Defendants filed their Reply to Plaintiff's Opposition on April 2, 2021. *See* ECF No. 41.

The Court determined that a report and recommendation from Magistrate Judge Butcher was not necessary, no oral argument was required, and took Defendants' Motion for Summary Judgment under submission for resolution on the papers pursuant to S.D. CAL. CIVLR 7.1.d.

Having carefully considered the record as submitted, the Court now GRANTS Defendants' Motion for Summary Judgment.

/ / /

---

[1] Page numbers for all documents filed in the Court's Case Management/Electronic Case File ("CM/ECF") will refer to the pagination generated by CM/ECF as indicated on the top right-hand corner of each chronologically-numbered docket entry.

## II. Factual Background

### A. Plaintiff's Claims

Plaintiff alleges that he was assaulted by Inmate Anthony Muci ("Muci") on May 16, 2019. (*See* Compl. at 12.) Plaintiff had returned to his cell after dinner and "sat at the table facing away from the door." (*See id.*) Plaintiff claims that was the "last [he] remember[ed] until regaining consciousness approximately [six] hours later at Scripps Hospital [Emergency Room]." (*Id.*)

Plaintiff contends Muci "has attacked elders before," as well as having been a "general population" inmate who is "always enemy to all "SNY" (special needs yard)." (*Id.*) Plaintiff is seventy years old and "part deaf." (*Id.*) Plaintiff alleges that the "custody staff of [RJD] knew or should have known of Musi's combative history but chose to turn a blind eye." (*Id.* at 17.)

### B. Defendants' Claims

On May 16, 2019, Defendant Scharr, an RJD correctional sergeant, was "directed to secure housing on Facility D for an inmate with a lower-tier/lower-bunk restriction who was a C-PAP user, but not a wheelchair user." (Scharr Decl., ECF No. 35-4 at ¶ 2) At the time, "Housing Unit 20 on Facility D was the preferred housing unit for non-wheelchair-bound C-PAP-using inmates because most of the electrical outlet configuration in the cells provided power to C-PAP units better than those in other housing units." (*Id.* at ¶ 3.)

After Scharr directed staff to find the "first available cell placement that would accommodate a lower-tier/lower-bunk-restricted inmate, and to start with Housing Unit 20." (*Id.*) It was discovered that Muci was a "lower-tier cell assigned to a lower bunk" but he did not have a "lower-tier restriction." (*Id.*) So moving Muci to an "upper-tier" cell that accommodated a "lower-bunk restriction" would allow an inmate requiring a C-PAP to be housed in Muci's cell. (*Id.*)

///
///

It was also discovered that Plaintiff had a cell on the upper tier, no cellmate, and he had no "housing restrictions dating back to 2017, including no lower-bunk or lower-tier restriction." (*Id.* at ¶ 4.) Officer Herrera, who worked second watch, "requested that [Plaintiff] be reassigned to the upper bunk in his same cell." (*Id.* at ¶ 5.) Officer Erece[2], who worked third watch, "requested that [Muci] be reassigned to [Plaintiff's] cell to the lower bunk." (*Id.* at ¶ 6.) Scharr "reviewed and approved this request." (*Id.*)

Plaintiff and Muci's moves were finalized and the inmate requiring the C-PAP was "assigned to the lower bunk that [Muci] had occupied." (*Id.* at ¶ 7.) "After reviewing housing information" for Plaintiff and Muci, Scharr "made the decision" to house Muci in Plaintiff's cell. (*Id.* at ¶ 8.) Scharr maintains that Defendants Ferrel, Juarez, Martinez, and Smith "were not involved in this housing decision." (*Id.*) Scharr reviewed Muci's file and determined that on April 26, 2019 Muci had be "evaluated and cleared for double-cell housing by a committee (which included a captain) that would have thoroughly evaluated [Muci's] background, Rules Violation Reports, and other case factors, in the process of determining his housing restrictions." (*Id.*)

Scharr maintains that before the "May 16, 2019 incident, [he] did not believe that [Muci] would assault [Plaintiff], or anyone else." (*Id.* at ¶ 11.) His review of Muci's file indicated that the "last incident before May 16, 2019, involving [Muci] and another inmate occurred on April 11, 2018, when [Muci] received a Rules Violation Report for fighting with his cellmate, but the cellmate admitted to hitting [Muci] first and that [Muci] was simply defending himself." (*Id.* at ¶ 13.) Both inmates signed "paperwork confirming that the incident was just a misunderstanding, that no safety issues existed, and they could continue to cell together." (*Id.*) Muci had another incident on April 20, 1999 which resulted in a charge of "battery on an inmate without serious injury." (*Id.*)

---

[2] Erece is not a named Defendant.

## III. Motion for Summary Judgment

Defendants have moved for summary judgment on the grounds that: (1) Defendants were not deliberately indifferent to Plaintiff's safety; (2) Plaintiff's Fourteenth Amendment claim should be dismissed; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) prior to filing his 42 U.S.C. § 1983 complaint in this Court. (*See* Defs.' P&As in Supp. of Summ. J. Mot. ["Defs.' P&As"], ECF No. 20 at 19-30.)

### A. Legal Standards for Summary Judgment pursuant to FRCP 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

As the moving parties, the Defendants "initially bear[] the burden of proving the absence of a genuine issue of material fact." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Defendants may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

While Plaintiff bears the burden of proof at trial, Defendants "need only prove that there is an absence of evidence to support [Plaintiff's] case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed,

5

3:19-cv-2110-DMS-DEB

summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If Defendants, as the moving parties, meet their initial responsibility, the burden then shifts to Plaintiff to establish a genuine dispute as to any material facts that exist. *Matsushita*, 475 U.S. at 586. To establish the existence of this factual dispute, Plaintiff must then present evidence in the form of affidavits and/or admissible discovery material to support his contention that a genuine dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

Plaintiff must also demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of his suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for him. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

Finally, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, if Plaintiff "fails to properly support an assertion of fact or fails to properly address [Defendant's] assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the

motion . . . ." Fed. R. Civ. P. 56(e)(2). Nor may the Court permit Plaintiff, as the opposing party, to rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). A "motion for summary judgment may not be defeated. . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006); *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("'[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.'") (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996)) (brackets in original)).

### B. **Eighth Amendment Deliberate Indifference**

Defendants argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim as they did not act with deliberate indifference when they housed Plaintiff with Muci. (*See* Defs. P&As at 19-21.)

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The second prong of this test is subjective, and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837. "'Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (internal alterations omitted)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for

7

commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In order to satisfy the first prong of a failure to protect claim that the deprivation is objectively serious, it must be shown that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *Lemire v. Cal. Dep't of Corr. & Rehab.,* 726 F.3d 1062, 1075 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 834). "The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Id.* at 1075-76.

Defendants argue that Scharr was "directed to find appropriate housing" for a "non-wheelchair-bound C-PAP using inmate" who required a "lower-tier/lower-bunk." (Defs.' P&As at 19; Scharr Decl. at ¶ 2.) Because the building to which Plaintiff was assigned had "most of the electrical outlet configuration in the cells provided power to C-PAP units better than those in other housing units." (Scharr Decl. at ¶ 2.) Plaintiff disputes this and claims, without citation to any supporting evidence, that "many other cells, in other buildings have multiple outlets." (Pl.'s Opp'n at 2.) Scharr directed "Facility D staff" to look for a cell that would accommodate this inmate and they found that "inmate Muci was in a lower-tier cell" but he did not have a "lower-tier restriction, only a lower-bunk restriction." (Scharr Decl. at ¶ 3.) Again, Plaintiff disputes this assertion and maintains that staff was "manipulated" by this inmate who uses a C-PAP because this inmate wanted to "move back to the same cell" where he was housed before he served a disciplinary sentence. (Pl.'s Opp'n at 2.) Plaintiff claims that this inmate "manipulated staff at Plaintiff's expense." However, Plaintiff does not dispute that Muci did not have a lower-tier restriction. (*See id.* at 3.) Scharr attests that they also determined that Plaintiff did not have a cellmate, was eligible for "double-cell housing," and had "no housing restrictions." (Scharr at ¶ 4.) Plaintiff does not dispute this statement. (*See* Pl.'s Opp'n at 3.) Scharr "reviewed and approved" staff's request to move Muci to Plaintiff's cell and allowed the inmate with the C-PAP to move into

8

Muci's cell. (*Id.* at ¶¶ 5-8.) Plaintiff claims that Scharr "reviewed housing information of Muci and knew of priors" but offers no evidence in the record that Plaintiff points to that clarifies what he understands or has direct knowledge of what these "priors" were or how Scharr purportedly knew of these "priors." (Pl.'s Opp'n at 4.)

Scharr does attest that his review of Muci's file indicated that "on April 26, 2019, inmate Muci had been evaluated and cleared for double-cell housing by a committee" that would have "thoroughly reviewed inmate Muci's background, Rules Violation Reports, and other case factors, in the process of determining his housing restrictions." (Scharr Decl. at ¶ 9.) Scharr also acknowledges that Muci did have a fight with a cellmate in April of 2018 but Muci's cellmate admitted to being the attacker and it was found that Muci was "simply defending himself." (*Id.* at ¶ 13.) Plaintiff responds in is Opposition by stating this previous altercation Muci had "has no bearing to this case." (Pl.'s Opp'n at 6.) Plaintiff does not dispute Scharr's testimony that Muci's altercation with a previous cellmate did not raise any concern to Defendants that Muci would be a danger to Plaintiff.

Plaintiff argues that because he has not personally gone through evaluations by a committee , the fact that Muci was evaluated such a committee "would infer to a reasonable person that Muci need[ed] a thorough looking over." (Pl.'s Opp'n at 5.) Plaintiff testified that he personally knew "nothing" about inmate Muci before the attack occurred. (Defs. Ex. 5, Pl.'s Depo., ECF No. 35-1, 20:9-11.) Plaintiff does not point to any evidence to support his claim that any of the named Defendants were aware that Muci would attack Plaintiff or that the risk was present that Muci would attack Plaintiff.

Based on record before the Court, the Court finds that Defendants have satisfied their initial burden to show an absence of evidence to support Plaintiff's claims that they failed to protect him from substantial harm. Now Plaintiff must establish a genuine dispute as to any material facts that exist. *See Matsushita,* 475 U.S. at 586.

The evidence in the record before the Court demonstrates that Scharr was unaware that inmate Muci would expose Plaintiff to a substantial risk of serious harm. Plaintiff

offers no evidence to dispute this.  The remaining Defendants, Officer Smith, Lieutenant Ferrel, Associate Warden Juarez, or Lieutenant Martinez, argue that Plaintiff "has no admissible evidence" that they "knew that inmate Muci had a combative history toward older inmates." (Defs. P&As at 21.)  When Plaintiff was asked what evidence he had that Scharr had prior knowledge inmate Muci's "combative history towards older inmates," Plaintiff testified that the "only information that [he] had after the incident was only by rumor." (Defs. Ex. 5, ECF No. 35-1, Pl.'s Depo 27:22 – 28:1.)  He further testified that he had "no hard physical proof" that Scharr had any prior knowledge of inmate Muci's purported history of violence with other inmates.

When Plaintiff was asked to identify what evidence he had that Defendant Ferrel "knew . . . that Muci had a combative history towards inmates." (*Id.* at 29:25-30:2.)  Plaintiff responded by testifying to claims of retaliation by Ferrel towards him *after* the incident with Muci but offers no testimony or other evidence that Defendant Ferrel was aware of a history of violence by inmate Muci.

Plaintiff was questioned as to whether he had "any evidence that Associate Warden Juarez knew that inmate Muci had a combative history towards older inmates." (*Id.* at 32:1-3.)  Plaintiff testified that he did not have any such evidence. (*Id.* at 32:4.)  Plaintiff was presented with the same question as to Defendant Smith. (*Id.* at 32:5-7.)  Plaintiff offered no specific testimony as to any knowledge on the part of Smith but instead testified as to general issues with "custody staff" whom he claimed went "out of their way to set up such situations where there's a combative situation." (*Id.* at 31:11-13.)  Finally, Plaintiff was asked the same question as to whether he had any evidence that Defendant Martinez was aware of inmate Muci's purported history and he testified "[n]o." (*Id.* at 33:4-9.)

Viewing the evidence and reasonable inferences in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of material fact with regard to Plaintiff's Eighth Amendment failure to protect claim. *See Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."). Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment claim is GRANTED.

### C. Supervisory Liability

Plaintiff seeks to hold all Defendants liable based on their purported failure to "follow CDCR's Department Operation Manual" and their "failure to train." (Compl. at 5.) Defendants seek summary judgment of these claims on the ground that there is no supervisory liability in § 1983 actions and there is no admissible evidence that any of the named Defendants had actual knowledge of inmate Muci's alleged combative history with other inmates. (*See* Defs.' P&As at 22-23.)

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A person deprives another of a constitutional right under section 1983, where that person "'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44. There is no respondeat superior liability under § 1983; therefore, supervisors, like the named Defendants, may be held liable for the constitutional violations of his or her subordinates only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). As set forth above in referring to Plaintiff's testimony in his deposition, he could not point to any evidence that any of the named Defendants had actual knowledge that inmate Muci was a threat to his safety.

To prevail on the failure to train claim, Plaintiff must be able to show that Defendants, in their individual capacities, were "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or

11

deprivation of rights." *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

Plaintiff fails to provide any specific factual allegations or evidence to support that any Defendant failed to properly train Defendant Scharr. He does not specify in his Complaint, Opposition to Defendants' Motion or in his deposition testimony in the record how the alleged lack of training led to the events giving rise to this action. It appears that Plaintiff is merely speculating that a lack of training led to the assault by inmate Muci and speculation is insufficient to create a triable issue of material fact. Plaintiff has not pointed to any evidence in the record that any named Defendant was deliberately indifferent to the need for training. Plaintiff implies, without any evidentiary support, that Scharr made the decisions to move inmates to different cells but lacked the authority to do so. He does not set forth any evidence that Scharr made decisions that exceeded his authority or that his decisions were made due to a lack of training by Defendants.

Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's failure to train claims is **GRANTED** pursuant to FED.R.CIV.P. 56.

### D. Fourteenth Amendment claims

Plaintiff seeks to bring Fourteenth Amendment substantive due process claims based on the same set of facts that gave rise to his Eighth Amendment claims. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide of analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997). Here, Plaintiff's Fourteenth Amendment "state created danger" allegations are based on the same set of facts he has brought his claims of violation of the Eighth Amendment's prohibition of

cruel and unusual punishment and thus, his claims should be analyzed under the Eighth Amendment.

Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment claims is **GRANTED** pursuant to FED.R.CIV.P. 56.

### E. Qualified Immunity and Exhaustion of Administrative Remedies

Defendants also move for summary judgment on the ground that they are entitled to qualified immunity. Because the Court has found that Defendants are entitled to summary judgment as to all of Plaintiff's claims, it need not reach any issues regarding qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

In addition, to the extent that Defendants seek summary judgment of Plaintiff's claims based on the argument that Plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to 42 U.S.C. § 1997e, the Court also finds that it need not reach this issue as the Court has found that Defendants are entitled to summary judgment as to all of Plaintiff's claims.

## IV. Conclusion and Order

For all the reasons explained, the Court:

**GRANTS** Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. The Clerk of Court is directed to enter judgment for all Defendants and close the file.

**IT IS SO ORDERED**.

Dated: July 14, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court

14

3:19-cv-2110-DMS-DEB